THOMAS P. HANNA and Another v. FRANK R. DUXBURY and Others.[1]

December 23, 1904.

Nos. 14,073—(177).

**Conspiracy to Defraud—Pleading.**

   The complaint alleges that defendant D. entered into a contract to
sell certain real estate for plaintiffs, and to account to them for eight
dollars per acre, all received over that amount to be retained by the
agent as commission; that the agent entered into such contract with
the design and purpose, in connection with other defendants, of cheat-
ing and defrauding plaintiffs, and, in pursuance of such purpose, sold
to certain other of the defendants certain parcels of land embraced
within the contract for sums in excess of eight dollars per acre; that
in each case such purchaser paid to the agent a sum less than eight
dollars per acre, and executed a mortgage for the remainder, with
knowledge of the fact that the agent was to account to plaintiffs for the
amount of eight dollars per acre, and with knowledge of such fraudulent
purpose of defendant D.

   It appearing that each purchaser had no knowledge of nor any con-
nection with the original conspiracy or contract, and it appearing that
the purchase of each particular tract by such defendants, respectively,
constituted an independent and separate transaction, conceding that such
defendants might under such circumstances be required to account to
plaintiffs for the land purchased by them respectively, and conceding
that the complaint states a cause of action against each one of them,
*held*, such causes are improperly joined.

Appeals by plaintiffs from orders of the district court for Pine
county, Crosby, J., sustaining separate demurrers to the complaint in-
terposed by defendant Frank R. Duxbury and defendants Francis A.
Duxbury and others.   Orders affirmed.

   *B. H. Schriber* and *A. E. Horn,* for appellants.
   *Duxbury & Duxbury,* for respondents.

LEWIS, J.

   Appeal from orders sustaining separate demurrers to the complaint,
upon the ground that several causes of action were improperly united.

   The following facts are set forth as the basis of the action:   Francis

[1] Reported in 101 N. W. 971.

A. and William R. Duxbury, during all of the times mentioned, were copartners in business under the firm name of Duxbury & Duxbury, duly licensed attorneys at law, and brothers of defendant Frank R. Duxbury. Prior to January 1, 1902, plaintiffs had entered into a contract with the owners of certain real estate located in Pine county for the purchase thereof, and on or about January 1, 1903, plaintiffs appointed Frank R. Duxbury their agent to sell the land, and agreed to pay him all he might get over eight dollars an acre as a commission for his services. Upon the recommendation of Frank R. Duxbury, plaintiffs authorized the firm of Duxbury & Duxbury to perform the necessary legal services in consummating any sales of such lands. The three defendants Duxbury thereupon conspired to defraud plaintiffs out of their title and interest to the land and the proceeds thereof in the manner set out in detail, and then follows a statement of nine transactions, designated subdivisions A to I.

A. January 2, 1903, Frank R. Duxbury, acting as agent for plaintiffs under the aforesaid contract of employment, negotiated a sale to defendants McCracken and Seeley of the southwest ¼, section 17, township 41, range 17, Pine county; that plaintiffs procured and delivered to Frank R. Duxbury a proper deed to the premises, conveying the same to McCracken and Seeley for the consideration of $1,600; that Frank R. Duxbury wrongfully, unlawfully, and for the purpose of cheating and defrauding plaintiffs, delivered the deed to McCracken and Seeley without receiving any consideration other than the sum of $760, and unlawfully and without authority, and for the purpose of defrauding plaintiffs, induced McCracken and Seeley and their wives to execute a mortgage on the premises to defendant John Richards for $840, which was without consideration and void. "That all the facts aforesaid mentioned in this subdivision A were then and there well known to said defendants William A. Seeley, Mary L. Seeley, William P. McCracken, Henrietta McCracken, and John Richards."

It is further stated that the mortgage was filed in the office of the register of deeds in Pine county, and that, of the $760 received by Frank R. Duxbury, only $543 was paid for the benefit of plaintiffs, and that the three Duxburys converted the remainder to their own use, on account of which unlawful acts plaintiffs were defrauded out of $1,006.15.

Subdivisions B, C, and D of paragraph 4 set out three separate transactions, constituting sales of different parcels of land to defendant Daniels, who in one case paid the entire consideration to Frank R. Duxbury, and in the other cases paid only a part of the consideration and executed mortgages for the remainder, the Duxburys having failed to pay over or account for the same.

A similar sale is stated in subdivision E to defendant Grayling, and in F, to defendant Dumdie. Subdivision G sets out a like deal with one Henry J. Tammel, who was not made a party defendant, and H recites a similar transaction with defendant E. A. Barr.

Under I the transaction takes a little different form. In this instance Frank R. Duxbury negotiated a sale of eighty acres to defendants E. A. and Arthur Moore for $1,200, and received the proper deed from plaintiffs, which he delivered to the purchasers; but, instead of receiving a cash consideration, a deed was delivered to certain real estate in Iowa, and a bill of sale of certain personal property in Iowa, the conveyances running to defendant Frank R. Duxbury. It is alleged that all of this was known to defendants Moore, and that, out of plaintiffs' moneys already in the hands of defendant Frank R. Duxbury, he paid out for plaintiffs' benefit $271.94 on account of this purchase.

In paragraph 6 it is stated that plaintiffs advanced to defendant Frank R. Duxbury $401.85 for the purpose of aiding and negotiating the sales aforesaid, and that defendants Duxbury have converted to their own use $285 of the amount, and, for the purpose of enabling defendant William R. Duxbury to aid in his employment, plaintiff Hanna assigned to him a certain mortgage on real estate in Spring Valley, Minnesota, amounting to $250, which he unlawfully caused to be assigned and converted to the use of defendants Duxbury.

Paragraph 7 states that February 18, 1903, in furtherance of the conspiracy to defraud plaintiffs, defendant Frank R. Duxbury induced plaintiffs to deliver to him a contract for 1,283.38 acres of the land above mentioned, located in Pine county, which contract was taken by Frank R. Duxbury for the benefit of the three Duxburys; that the consideration named in the contract was $7.50 per acre; that plaintiffs executed and delivered the proper deed conveying to Frank R. Duxbury 483.38 acres of land for the stated consideration of $3,625.35, the

deed was recorded by defendant, and the land conveyed by Frank R. Duxbury to his brothers, who thereafter executed a mortgage on the premises for $1,600; all of which deeds were duly recorded. That thereafter, January 19, 1904, such mortgage was satisfied by the use of money belonging to plaintiffs, received from the sales of lands set out in subdivisions A to I of the complaint. Other transactions in respect to the remainder of the land covered by the contract of purchase are also set forth.

Paragraph 8 contains another transaction, to the effect that defendant Frank R. Duxbury, as agent of the plaintiffs, negotiated a sale of one hundred twenty acres of land in Pine county, and upon an examination of the abstract discovered there was an outstanding title adverse to plaintiffs, and, acting upon such knowledge, defendants Duxbury secured a quitclaim deed of such adverse interest running to defendant Frank R. Duxbury, and then instituted suit to quiet title as against plaintiffs' grantors, with the intent of cheating and defrauding these plaintiffs; and that defendants Duxbury procured titles of adverse interests respecting other lands belonging to plaintiffs, having obtained knowledge thereof in the course of their employment as plaintiffs' agents and attorneys, and that they hold title to such adverse interests in pursuance of the general conspiracy to defraud plaintiffs out of the lands.

The prayer for relief demands a money judgment against defendants Duxbury for the various amounts alleged to have been converted, annulling and canceling the deeds mentioned in paragraph 7, and decreeing that plaintiffs are the owners of the lands therein described, but if the court should find that defendants Duxbury have any title or interest in any tracts of land mentioned in paragraph 7, that their interest be decreed subordinate to that of plaintiffs; that the mortgage executed by defendants McCracken and Seeley, set out in subdivision A, be canceled, and that plaintiffs be decreed to have a lien for $840 upon the premises conveyed to McCracken and Seeley; that defendants Duxbury be directed by the judgment of the court to deliver to plaintiffs the mortgage described in subdivision C of paragraph 4; that the mortgage executed by defendant Daniels be annulled and set aside, and that plaintiffs be decreed to have a lien upon the premises conveyed to Daniels superior to the interests of the defendants; a similar prayer

with reference to defendants Grayling, Dumdie, and Barr; that the deed of conveyance from plaintiffs to defendants Moore be canceled, and that plaintiffs be decreed to be the owners of the land conveyed to them, unless the court should find that defendants Moore are the owners, in which case plaintiffs be adjudged to have a superior lien upon the premises for $928.

The complaint was demurred to separately by defendants Francis A. and William R. Duxbury, and defendant Frank R. Duxbury, upon the ground that several causes of action are improperly united, and that the complaint does not state facts sufficient to constitute a cause of action. Both demurrers were sustained by the trial court, upon the ground that several causes of action were improperly united.

It was no doubt the theory of the pleader that the allegations of fraud and conspiracy alleged to have been designed by defendants Duxbury with respect to the lands under contract in Pine county permeated and entered into every subsequent transaction with the different defendants to such an extent that they may be called to account in connection with the Duxburys. Conceding that as to defendants Duxbury a cause of action is stated which arose out of their failure to carry out the terms of their contract, does it follow that each purchase by the several defendants is a part of and embraced within the same cause of action?

Taking up subdivision A. The pleader sets out in detail a sale and purchase to McCracken and Seeley of one hundred sixty acres of land by plaintiffs, acting through their agent, Frank R. Duxbury. The purchasers agreed to pay for this land two dollars an acre more than the agent was to account for to plaintiffs; that instead of paying the agent the full amount of eight dollars an acre cash, amounting to $1,280, the purchasers gave the agent only $760, and executed a mortgage, running to defendant John Richards, for $840, to secure the remainder. The only allegation to connect defendants McCracken and Seeley with the original transaction between plaintiffs and the Duxburys is this:

> That all the facts aforesaid mentioned in this subdivision A were then and there well known to said defendants William A. Seeley, Mary L. Seeley, William P. McCracken, Henrietta McCracken, and John Richards.

These purchasers knew that Frank R. Duxbury was plaintiffs' agent, with authority to sell the land and account to them for the sum of eight dollars per acre. They knew they were agreeing to purchase the land at an advance of two dollars per acre, which amount constituted the agent's commission, and that the agent had a purpose to defraud his principals by receiving a less sum in cash than eight dollars per acre, and in taking a mortgage for the remainder, running to a third party, John Richards. Admitting that the allegations are sufficient to charge Seeley and McCracken with knowledge of the fraudulent purpose of Frank R. Duxbury in taking a mortgage instead of the cash, it is not charged that they received any benefit therefrom, and such knowledge was limited to the particular transaction under consideration, viz., the purchase of the one hundred sixty acres by them.

The same may be said with reference to the facts set forth in subdivisions C, D, E, F, H, and I, of paragraph 4. No doubt, if the purchasers of the several tracts, McCracken, Seeley, and others, had knowledge of the alleged design and purpose of the Duxburys to obtain title to plaintiffs' land without accounting for the proceeds according to the terms of their contract, and for the purpose of carrying out such scheme they subsequently became purchasers of parcels of land and paid the purchase price and executed the mortgages to the Duxburys and other parties in furtherance of such scheme, then they could be brought in as parties defendant and compelled to account for their part in the illegal transactions. The pleader, no doubt, proceeded upon this theory, as the citation of authorities would indicate. For instance, in Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, from the opinion in which case counsel quotes the following language: "Where a complaint alleges a conspiracy to cheat and defraud plaintiff in respect to his interests as a stockholder in a corporation, all separate acts or transactions of defendants done pursuant to it may be joined in the complaint, although some of them do not affect all the defendants, and none of them affect any two of the defendants to the same extent or degree." But an examination of the complaint in that case shows that all of the parties were connected with the transaction from the beginning, and that the several acts charged as a part of the conspiracy were not separate and independent transactions, but were merely the various acts committed in connection with the main cause set forth.

This is not a case within the rule cited in Foster v. Landon, 71 Minn. 494, 74 N. W. 281, viz., that a cause against one defendant may be so entire as to be incapable of being prosecuted in several suits, and yet some other defendant may be a necessary party to some portion only of the case stated, in which case the objection of multifariousness would not obtain. That rule applies only where there is but one cause of action, and where the subsequent acts connecting defendants arise out of the same transaction, forming one course of dealing, all tending to one end. 2 Pomeroy, Rem. & Rem. Rights, § 486. Neither is this case within the rule that all the fraudulent grantees may be united as defendants in an action brought to set aside fraudulent conveyances, where each grantee is charged only with fraud in his own purchase. That rule applies in respect to creditors' bills. Hamlin v. Wright, 23 Wis. 491. The state of facts necessary to the application of such a rule is entirely absent.

The facts pleaded with respect to the sales mentioned under subdivisions A, C, D, E, F, H, and I, paragraph 4, constituted separate and independent transactions as to each other. Each of these separate transactions is in no way connected with the subject of the action involved in each of the other transactions and with the main cause of action pleaded against defendants Duxbury. Such being the case, it may be added that they are improperly joined, for the reason that these several independent causes of action do not affect all the parties to the suit. Section 5260, G. S. 1894, subd. 7, provides that the causes of action so united shall belong to only one of the classes, and affect all the parties to the action. Trowbridge v. Forepaugh, 14 Minn. 100 (133); Berg v. Stanhope, 43 Minn. 176, 45 N. W. 15; and Langevin v. City of St. Paul, 49 Minn. 189, 51 N. W. 817.

Orders affirmed.